Antonio CIPOLLONE, Individually, and as Executor of the Estate of Rose D. Cipollone, Plaintiff,

v.

LIGGETT GROUP, INC., a Delaware Corporation; Philip Morris Incorporated, a Virginia Corporation; and Loews Theatres Inc., a New York Corporation, Defendants.

Susan HAINES, etc., Plaintiff,

v.

LIGGETT GROUP, INC., et al., Defendants.

Civ. A. Nos. 83–2864, 84–678.

United States District Court, D. New Jersey.

Nov. 12, 1986.

See also 3 Cir., 802 F.2d 658.

Raymond F. Dryzdowski, Brown & Connery, Kulp, Wille, Purnell & Greene, Westmont, N.J., for defendant Philip Morris Inc.

Mark Z. Edell, Budd, Larner, Bross, Picillo, Rosenbaum & Sade, Short Hills, N.J., for plaintiffs.

## OPINION

SAROKIN, District Judge.

This matter is now before the court pursuant to defendants' receipt of a writ of mandamus from the Third Circuit. Specifically, the Third Circuit's opinion directed this court to (1) reconsider its prior decision reversing various aspects of a magistrate's protective order in light of the "good cause" standard of Rule 26(c) of the Feder-

al Rules of Civil Procedure, and (2) to reconsider its reversal of that aspect of the magistrate's protective order which permits the party seeking protection from dissemination to designate documents confidential without first establishing good cause to do so on a document-by-document basis. The court proceeds to do so.

The order heretofore entered in this matter prohibited *all* discovery of defendants from being disclosed either to the public in general or plaintiffs in other similar litigation. Before defendants are entitled to such a protective order they are required to establish that there is "good cause" for its entry and continuance.

The general focus of discovery in this matter has been the knowledge of the defendant tobacco companies regarding the risks of cigarette smoking and what action was taken to conceal or minimize these risks and neutralize the required warnings.

The Third Circuit has made it clear that first amendment considerations are not implicated in this analysis. It is thus this court's duty to abide by that mandate. However, the court expresses its concern if the public interest is eliminated as a factor in determining whether discovery should be protected from disclosure.

Discovery may well reveal that a product is defective and its continued use dangerous to the consuming public. The public disclosure of that information will certainly embarrass that party and cause it financial loss. It is inconceivable to this court that under such circumstances the public interest is not a vital factor to be considered in determining whether to further conceal that information and whether a court should be a party to that concealment.

However, even ignoring the public interest, defendants have failed to demonstrate any good cause for the concealment of otherwise non-confidential materials from the public in general. Defendants' arguments are even less persuasive with respect to related litigation. By requiring each plaintiff in every similar action to run the same gauntlet over and over again serves no useful purpose other than to create barriers and discourage litigation against the defendants. Good cause as contemplated under Rule 26 was never intended to make other litigation more difficult, costly and less efficient.

BACKGROUND

The protective order at issue here was entered on March 25, 1985 by the Honorable Robert E. Cowen, United States Magistrate. As noted by this court in its prior opinion in this matter, the order limits the extent to which one party may disclose certain confidential information made available by its opponents during discovery proceedings. Specifically, the order provides that "[a]ll information produced or exchanged in the course of this civil action or any appeal arising therefrom ... shall be used solely for the purpose of this case," (para. 2), and shall be returned or destroyed after trial. (para. 13.) More complex limitations are imposed upon "confidential information". If a party has a "good-faith belief that the information falls within the scope of confidential information under the Federal Rules of Civil Procedure", (para. 3) it may label such information accordingly, and it is then to be filed, or otherwise utilized, under seal (para. 11–12).

Once labelled, confidential information is, under the order, open for inspection only by counsel or their associates or employees (para. 6(a)), or by experts retained for the purposes of the litigation (para. 6(b)), but the latter are required to sign an oath attesting to their understanding that they are bound by the terms of the order (para. 7). In the event of any disclosure, counsel and the court, shall be advised, in writing, of the name, address and occupation of the person to whom counsel propose to disclose, for the purposes of this litigation, said confidential information. *Id.* Additional protections or other modifications of the order may also be sought.

Plaintiffs appealed this order, arguing that it constituted an abuse of discretion and a violation of both the first amendment and of basic discovery principles. By opin-

ion dated July 17, 1986, this court found merit in a number of plaintiff's contentions, concluding (1) that the court should engage in a *de novo* standard of review because first amendment rights were implicated by the protective order; (2) that according to *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, 104 S.Ct. 2199, 2207, 81 L.Ed.2d 17 (1984), protective orders such as the one here at issue limit first amendment freedoms unless they are no broader than necessary to protect the governmental interests furthered by Rule 26(c), *see Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 ("First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression .... Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved."); (3) that the order violated Rule 26(c) and also the first amendment by shifting the burden with regard to confidentiality designations from the party desiring such designation to the protesting party; (4) that the order improperly restricted the use of non-confidential discovered materials to use in this case; and (5) that the order likewise improperly prohibited plaintiffs' attorneys from using confidential material in other litigation in which they are participants. *Cipollone v. Liggett Group*, 106 F.R.D. 573 (D.N.J. 1985).

Defendants appealed, and in the alternative sought mandamus. The Third Circuit found this court's order to be nonappealable, *Cipollone v. Liggett Group*, 785 F.2d 1108, 1117 (3d Cir.1986), but concluded that it did have mandamus jurisdiction pursuant to 28 U.S.C. § 1651, because the matter at issue involved the disclosure of confidential materials, 765 F.2d at 1118. The Third Circuit thereupon determined that this court had erred in two ways. First, it had misread *Seattle Times* when it concluded that an order prohibiting the disclosure of information obtained under the discovery rules violates the first amendment unless it meets the "least restrictive

means" test. Rather the Third Circuit explained, the Supreme Court's first amendment language in *Seattle Times* was mere *dictum*, and as such was outweighed by those portions of the opinion that emphasized that the discovery process is not a forum traditionally open to the public, and that held that "a protective order ... entered on a showing of good cause does not offend the First Amendment." 467 U.S. at 37, 104 S.Ct. at 2209; *see New York v. United States Metal Refining Co.*, 771 F.2d 796, 802 (3d Cir.1985). The Third Circuit then stated as follows:

> We may summarize thus. *Seattle Times* required the district court merely to inquire whether the defendants had demonstrated good cause for the protective order; the district court instead applied a least restrictive means test. The good cause standard is significantly less demanding than the least restrictive means test; the court's error, therefore, may have worked a serious detriment to the defendants.

Second, the Third Circuit determined that this court had improperly exercised *de novo* review, as such review was premised on the perceived constitutional question at issue, which issue did not actually exist under a proper reading of *Seattle Times*. This court was therefore instructed on remand to review the magistrate's order to determine whether it is "clearly erroneous or contrary to law", 28 U.S.C. § 636(b)(1)(A), particularly with regard to whether that order was based on a sufficient showing of "good cause". The Third Circuit added that this court had erred in concluding that Rule 26(c) obliged it to require defendants to show good cause for protected status on a document-by-document basis, as an umbrella order is appropriate for complex litigation such as this. Having been so instructed, the court turns once again to the task of evaluating the appropriateness of the magistrate's protective order.

## DISCUSSION

### I. *The Question of Good Cause*

Plaintiffs contend that Paragraph 2 of the protective order, limiting use of non-

confidential discovery materials to litigation in this case,[1] is not supported by "good cause" as required under Rule 26(c).

Rule 26(c) states:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....

The Third Circuit opinion above explicitly guides the court in its application of this language to the case at hand. The opinion stressed that defendants have the burden of "demonstrating a particular need for protection." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986). The opinion counseled, "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.... Moreover, the harm must be significant, not a mere trifle." *Id.* The Third Circuit, as an example of an argument that failed to establish good cause, cited a Second Circuit opinion finding insufficient to support a protective order the party's broad allegations that disclosure would injure them in the industry and community. *Id.*, citing *Joy v. North*, 692 F.2d 880, 894 (2d Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). The Third Circuit summarized as follows:

We add to the district court's comments only our own understanding that, because release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment is particularly serious. As embarrassment is usually thought of as nonmonetizable harm to individuals, it may be especially difficult

for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground.... [T]o succeed, a business will have to show with some specificity that the embarrassment resulting from dissemination of the information would cause a significant harm to its competitive and financial position.

*Id.*

 The magistrate's protective order did not contain specific written findings that good cause existed for prohibiting plaintiffs either from disseminating the fruits of nonconfidential discovery to the public or from utilizing discovery in other litigation. The court, upon analysis of the order itself, the transcript of the proceedings before the magistrate, and defendants' briefs and oral arguments, identifies five specific arguments for "good cause" under Rule 26(c): 1) that defendants will suffer financial and other embarrassment; 2) that fairness at trial will be compromised; 3) that plaintiffs are estopped from disseminating this material by a prior agreement of plaintiffs' counsel; 4) that discovery in this case will be facilitated; 5) that dissemination constitutes an abuse of the discovery process. The court examines whether any of these arguments constitutes "good cause" for limiting use of discovery solely to this case.[2]

*(1) Financial and other embarrassment*

The order signed by Judge Cowen, submitted by defendants, contained the following general language in its preamble:

And it further appearing that the confidential business records and private information of the parties should be given the protection of an order of this Court to prevent injury to and invasion of the confidential property of the parties by reason of any disclosure not otherwise

---

**1.** Paragraph 2 applies to all discovery materials. Plaintiffs do not challenge the paragraph's limitation as it applies to "confidential" material.

**2.** The court does not attempt to identify the grounds upon which the magistrate's general finding of good cause was based. The court analyzes whether any of these arguments could support the magistrate's finding.

necessitated by the parties' lawful interests in this litigation only, and good cause appearing ...

The order does not specify or elaborate on the "injury" which the order is designed to prevent. Defendants, in their brief, elaborate on the nature of this "injury."

> The likelihood of financial and other forms of embarrassment from dissemination was obvious when the protective orders were entered, and they remain so.... This litigation, which has been closely followed by the financial community and the press, has resulted in wide gyrations in the values of the defendants' stock, and plaintiffs' counsel have met with investment advisers to discuss this litigation in an attempt to affect the market price of the defendants' stock.

Defendants' Memorandum of Law in Support of Protective Order of March 25, 1985, at 12.

In essence, defendants now argue that if the truth be known and discovery disclosed it might prove embarrassing and affect the market price of defendants' stock. Such a sweeping allegation, however, does not reach the level of specificity that the Third Circuit has emphasized is required by Rule 26(c). Defendants have shown that their financial standing has been affected by this and related litigation. Defendants have not substantiated, however, how preventing the release of all discovery materials is needed to prevent particularized, significant injury to their financial and competitive position. Defendants have not identified a single document which they contend will or might have such an effect.

The inadequacy of defendant's showing is illustrated by contrasting a recent case in which a corporation made a sufficiently particularized showing to justify a finding of "good cause" to retain a protective order. *See Tavoulareas v. Washington Post Co.*, 111 F.R.D. 653 (D.D.C.1986). In *Tavoulareas*, Mobil Corporation presented a statement explaining how release of discovered materials would significantly impair specific business relationships of Mobil in Saudi Arabia. The evidence presented explained how release of these documents would destroy the confidentiality necessary to maintain those ongoing relationships. The court found this to be a sufficient showing under Rule 26(c) both to justify the initial entry of the order and to justify the order's retention after litigation.

Defendants, in contrast, allege only that release of discovery materials will cause their general business standing to decline. The only specific "example" cited by defendants is the fact that Philip Morris stock increased in value ten points after the Third Circuit's issuance of their writ of mandamus. Defendants' Memorandum, at 17; Defendants' Reply Memorandum, at 7. The probative value of this event is uncertain.[3] More fundamentally, this isolated incident does not constitute a showing of particularized and significant injury required by Rule 26(c). Defendants never identify specifically how dissemination will injure their business, as did Mobil in *Tavoulareas;* instead, defendants offer only the broad allegation that release will harm their overall standing. Rule 26(c), as made plain by the Third Circuit, requires more for a showing of good cause.

Defendants' arguments are even less persuasive with regard to limiting use of discovery material in other litigation. The causal chain behind their position is as follows. Defendant's financial and competitive position may be harmed by this type of litigation; prohibiting use of *Cipollone/Haines* discovery in other litigation makes such litigation more difficult to sustain; consequently, defendant will suffer significant injury if discovery is not confined to this litigation. Defendants' argument not only fails to substantiate a particularized and significant injury as required

---

**3.** Defendants do not explain the surrounding market context of this rise; thus, the court cannot know if the Third Circuit's opinion was the critical or even an important factor in the price change. Additionally, defendants offer no evidence that stock prices fell due to this court's reversal of the entry of the order.

by Rule 26(c). The argument also runs counter to a fundamental purpose of discovery under the Federal Rules. All of the Federal Rules are informed by the admonition of Rule 1 that they "be construed to secure the just, speedy, and inexpensive determination of every action." Acting consistent with this purpose, a number of courts have rejected requests to limit the use of discovery to the litigation in which it is initially obtained. Their reasoning is best summarized by the opinion of Judge Wisdom in *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir.1980), which states that the presumption of open discovery

> should operate with all the more force when litigants seek use discovery in aid of collateral litigation on similar issues, for ... access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process. Particularly in litigation of this magnitude, we, like the Multidistrict Panel, are impressed with the wastefulness of requiring the [collateral party] to duplicate discovery already made.... We therefore agree with the result reached by every other appellate court which has considered the issue, and hold that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.

*See Marcus, Myth and Reality in Protective Order Litigation*, 69 Cornell L.Rev. 1, 41 (1983); *see also Cipollone v. Liggett Group, Inc.*, 106 F.R.D. at 585–586 (citing several cases standing for this proposition). Here, defendants' showings simply do not establish that substantial rights will be so tangibly prejudiced that injustice will result unless the discovery obtained in this litigation is limited to it. Indeed, no direct purpose can be discerned from their position except to discourage future identical actions against them by maintaining the costliness of the discovery involved to other plaintiffs. As noted by this court in its previous opinion herein,

> The court cannot ignore the might and power of the tobacco industry and its ability to resist the individual claims asserted against it and its individual members. There may be some claimants who do not have the resources or such able and dedicated counsel as in this case to pursue the thorough investigation which these cases require. To require that each and every plaintiff go through the identical long and expensive process would be ludicrous. Even from the point of view of the defendants (though they resist), it would seem that they would benefit by avoiding repetition of the same discovery in each and every case." *Cipollone*, 106 F.R.D. at 577.

So long as the initial litigation has not itself been instituted in bad faith for the purpose of obtaining documents for other actions, and so long as the interests of those represented in the initial litigation are being fully and ethically prosecuted, the Federal Rules do not foreclose the collaborative use of discovery. *See American Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 597 (7th Cir.1978); *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 410 (N.D.N.Y. 1973).

Defendants expressed concern at oral argument that each court should have the right to control discovery in the particular matter before it, and that making the discovery in this matter available in others will defeat that control. That concern is susceptible to easy resolution. Any plaintiff seeking to utilize the discovery in this matter for his or her own purposes shall be required to seek leave of the court before whom the matter is pending. That court can resolve any objections based upon relevance or otherwise.

Defendants have not made a showing that they will suffer "embarrassment" or injury sufficient to support the magistrate's finding of good cause under Rule 26(c).

### (2) Fairness at trial

Defendants in their brief on this motion assert that the good cause supporting the order lies also in the preservation of a fair trial. Defendants claim that "extra-judicial use of the documents covered by the protective order could affect the fairness of the trials themselves, and would be in conflict with the purpose of discovery." Defendants' Memorandum, at 12. At oral argument, counsel for defendants referred to news coverage, including a *New York Times* article in which plaintiffs' counsel was quoted. Transcript of Proceedings, September 25, 1986, at 25. According to defendants' counsel, plaintiffs' counsel inaccurately characterized certain documents to the prejudice of defendants. *Id.* Defendants argue that "one has to assume that the judge was aware of these facts and took them into account when he decided to enter this order." *Id.* at 26.[4]

The court is satisfied that appropriate precautions can be taken in the jury selection process to guard against the possibility that the publication of such material might affect the outcome of the trial. This argument does not support the magistrate's finding of good cause.

### (3) Estoppel

Defendants, in their brief, claim that they initially agreed to comply with broad discovery requests on plaintiffs' assurances that the discovered documents would be used only for this litigation, and that it would be "grossly inequitable" for these documents to be "let loose for the purposes of harming the defendants." Defendants' Memorandum, at 12.

The court finds the claim to be totally without support. The agreement which plaintiff's counsel reached was one made pending entry of a protective order and was scrupulously honored by a plaintiffs' counsel. Therefore, restriction on the use of discovery materials as to this litigation only cannot be predicated upon any agreement or representation by plaintiff's counsel.

### (4) Facilitation of discovery in this case

The magistrate, at the March 25, 1985 hearing at which he issued the protective order, explained the rationale behind his decision.

[T]he Court has decided that I'm going to go with the protective order that has been propounded—proposed by the defendant Reynolds in both the Haines and Cipollone case. In the event this decision is appealed or reviewed by higher authority, I want the record to reflect that it's my opinion, it's my judgment that having this order in place will facilitate the efficacious production of documents and discovery of the defendants to some extent and that it will streamline the litigation to the point where the discovery sought and had in this case will be for this case and this case alone, and that at the time this case is tried that, of course, anything that goes into the record at that time will be a public matter and public information.

Transcript of Proceedings, March 25, 1985, at 56. Thus, in the magistrate's own words, the good cause behind the order was his belief that the order would "facilitate" and "streamline" the litigation.

The magistrate's reasoning, though based on commendable motives, misconstrues the nature of the "good cause" requirement of Rule 26(c). The magistrate apparently felt that limiting the use of discovery to this case alone would "secure the just, speedy and inexpensive determination" of this action, consistent with the intent expressed in Rule 1 of the Federal Rules. Rule 26(c), however, does not empower individual courts to make such policy decisions. The Rule allows a court to "protect a party or person"—the focus is on injury to a specific individual, not on general concerns of case administration. Rule 26(c), understood as a piece of a larger framework, reflects a policy decision that the "just, speedy and inexpensive" determi-

---

**4.** The magistrate stated at the proceeding, however, that he read nothing in the *New York* *Times* article that was "improper at all." Transcript of Proceedings, March 25, 1985, at 39.

nation of actions is best furthered by permitting the entry of protective orders only to prevent injury to individuals.

The Third Circuit explanation of "good cause" recognizes that the Rule 26(c) inquiry must focus on the harm defendants will allegedly suffer from dissemination of discovery material. The Third Circuit directed this court to test defendants' allegations of harm against the legal standards they provided. Nowhere in the Third Circuit's directive is this court told that the "good cause" supporting a protective order may be general concerns of trial administration.

The magistrate's rationale that entry of the protective order would facilitate and streamline this litigation is not sufficient "good cause" under Rule 26(c).

### (5) Abuse of the discovery process

Defendants' counsel at oral argument contended that good cause may be established by a showing that a protective order is needed "to prevent an abuse of the discovery process." *Id.* at 20. Defendants' counsel explains that the sole purpose of the discovery process is to help the parties prepare for litigation. Anything that goes beyond that constitutes an abuse of the discovery process...." *Id.* Because dissemination to the public and use in other litigation goes beyond the "sole purpose" of discovery, the magistrate had "good cause" to enter this order to protect from that abuse.[5]

This argument, like that concerning facilitation of discovery, ignores the language and misconstrues the purpose of Rule 26(c). The Supreme Court has stated that Rule 26(c) protective orders are designed to prevent abuse of discovery, but abuse in the sense of causing injury to particular individuals.

> There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could

be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.

*Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 35, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984). Again, the Third Circuit's discussion of "good cause" shows that protection from injury to individuals must be the focus of a Rule 26(c) protective order. Thus, the mere fact that plaintiffs intend to use these materials outside of this litigation is not "good cause" to support the protective order, unless defendants can establish that the discovery was not procured in good faith for the purposes of this litigation. No such showing is made or claimed. Absent a showing that plaintiff's use will sufficiently injure the defendants, the magistrate had no good cause to limit use of the discovery to this case alone.

In summary, the magistrate's finding that defendants had shown good cause to support an order that nonconfidential discovery "shall be used solely for the purpose of this case" is clearly erroneous and contrary to law. To the extent that the magistrate found good cause based on embarrassment to defendants, the effect of dissemination on the fairness of trial, or the prior conduct of plaintiffs' attorney, the finding is clearly erroneous. To the extent that the magistrate found good cause based on a desire to facilitate discovery or to prevent an abuse of the discovery process, the finding is contrary to law.

### II. The Propriety of an Umbrella Order

■ Finally, the Court of Appeals pointed out that this court reasoned improperly when it vacated that aspect of the magistrate's order that permitted defendants to designate documents "confidential," with plaintiffs bearing the responsibility of contesting such designation. 785 F.2d at 1122.

This court expressed its concern then and repeats it now. The wholesale designation

---

[5] The magistrates' order contains no specific finding that plaintiffs' proposed use is an abuse of the discovery process. Furthermore, Judge Cowen's remarks at the proceeding contain no such reference. Defendant's counsel suggests, though, that "We have to assume" that Judge Cowen had the fundamental principles of discovery in mind when he entered the order.

of confidentiality by defendants places an undue and unnecessary burden upon plaintiff. The potential of an ultimate award of sanctions does not relieve plaintiff's counsel of the need to expend time and money in the first instance to set aside that designation. The fact that they may be ultimately reimbursed after the expenditure of further time and money seeking such reimbursement is insufficient and fails to recognize the inequality of the parties before the court in reference to their economic positions and their relative abilities to pursue or resist discovery.

According to the Third Circuit, this court erred when it concluded that such order shifted the burden of proof to plaintiffs in violation of Rule 26(c). Rather, the Third Circuit noted, it is appropriate and in keeping with the Manual for Complex Litigation to utilize an "umbrella order" for confidentiality designations, in which groups of documents may be marked confidential subject to the good faith requirement that defendants invoke such protection only for documents that are truly confidential. Having been so instructed, the court concludes that the magistrate's determination was not clearly erroneous or contrary to law in this regard, and therefore upholds the aspect of the magistrate's order that permits defendants to make an initial designation of confidentiality, subject to their determination that such designation is warranted in good faith, and subject to plaintiff's later opportunity to challenge such designation and request sanctions pursuant to Fed.R.Civ. P. 26(g).

CONCLUSION

The court abides by its previous reversal of Paragraph 2 of the magistrate's order as it applies to nonconfidential materials. The court orders that any other plaintiff seeking to utilize discovery from this matter comply with the procedures described in the opinion. The court abides by its previous modification of Paragraph 7 of the order. The court affirms the propriety of the "umbrella order" entered by the magistrate. The court directs plaintiffs' counsel to submit an appropriate order.