**MAY COATING TECHNOLOGIES, INC., Plaintiff,**

v.

**ILLINOIS TOOL WORKS, Defendant.**

**No. Civ.–4–93–953.**

United States District Court,
D. Minnesota,
Fourth Division.

June 13, 1994.

Richard A. Arrett, Vidas Arrett & Steinkraus, Minneapolis, MN, for plaintiff.

Alan Hall Maclin, Briggs & Morgan, St. Paul, MN, Granger Cook, Jr., Ted K. Ringsred, Cook Egan McFarron & Manzo, Chicago, IL, for defendant.

## ORDER

NOEL, United States Magistrate Judge.

THIS MATTER came before the undersigned United States Magistrate Judge on the 14th day of March, 1994 for a hearing on plaintiff's motion to compel discovery and on defendant's motion for a protective order. Many of the issues in the motions overlap.

### I. FACTS.

This is a patent infringement action in which plaintiff, May Coating Technologies, Inc. ("May Coating"), claims that the ITW Dynatec 2022 Convert–A–Drum Hot Melt Unloader ("Convert–A–Drum") made by defendant Illinois Tool Works ("ITW") infringed plaintiff's U.S. Patent No. 4,919,308. The technology at issue involves large machines for melting and dispensing "hot melts."[1] The accused product is an optional accessory which mounts on top of ITW's standard 2022 DH hot melt melter/dispenser unit.

### II. DISCUSSION.

#### A. DEFENDANT'S MOTION FOR A PROTECTIVE ORDER.

ITW seeks a protective order barring May Coating and its attorneys from contacting, communicating, or corresponding with ITW's actual and prospective customers for any purpose relating to this litigation, except through ITW's attorneys for reasonably necessary discovery. ITW claims that the order it seeks balances the interests of both parties by allowing May Coating to conduct necessary discovery, but not allowing it to use the lawsuit to harass ITW's actual and potential customers. ITW contends that it has made good faith efforts to produce copies of all correspondence with its customers relating to Convert–A–Drum, but has redacted the customers' identities.

After filing the lawsuit, May Coating issued a press release indicating that it had sued ITW for patent infringement. May Coating also sent out infringement notice letters to companies May Coating believed either owned or were considering purchasing ITW's product. ITW contends that plaintiff now seeks to prejudice ITW customers by offering a full release in exchange for the customer's cooperation in connection with this litigation. In sum, ITW contends that May Coating has tried to create a *de facto* injunction against ITW, without going through the proper legal procedure.

ITW recognizes plaintiff's need to conduct a test on an in service Convert–A–Drum and has offered to make a Convert–A–Drum available at a customer's facility for inspection, testing, and videotaping. Moreover, to the extent discovery is reasonably necessary from a customer, ITW is willing to cooperate in obtaining from its customers any information it is unable to provide itself.

May Coating opposes the motion. May Coating argues that the stipulated protective order controls the handling of confidential information.

May Coating contends that ITW has no standing to object to the discovery May seeks from ITW customers. These customers might voluntarily cooperate with May Coating. Moreover, May Coating asserts that it has not harassed ITW's customers. The letters it sent were not harassing. Rather, May claims these letters put third parties on notice of May Coating's legal rights. May Coating thought it prudent to act on its own information prior to receiving any confidential customer information from ITW, so that it would not later be charged with violating the protective order. May Coating argues that ITW simply wants to act as a "clearing house" for all highly relevant information which ITW's customers possess.

---

1. The term "hot-melt" refers to materials, often adhesives and coatings, that appear solid at room temperature, but that can be thermally melted and used for a wide variety of purposes.

May Coating argues that it needs customer information because a prior test was not successfully completed. ITW controlled the prior test. The operational details of how each customer uses the machine are relevant, because they effect how the slug of hot melt slides from the counter. May does not want to rely on the results of another test set up by ITW at a customer of its choice.

May Coating further argues that ITW does not possess the facts it needs. Only the customers have the information. Unless ITW can prove that all their customers use the machine with exactly the same adhesives, in the same containers and heat the containers to exactly the same temperature for the same period, then simply testing one machine at one customer location is inadequate.

Fed.R. of Civ.P. 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. *Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 125 (D.Mass.1990); *citing Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984). The requirement that good cause be shown, however, still must be met by the party seeking the protective order. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 (3rd Cir. 1986), *remand*, 113 F.R.D. 86 (D.N.J., 1986), *mandamus denied*, 822 F.2d 335 (3rd Cir. 1987), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). The court concludes that ITW has met its burden of showing "good cause" under Fed.R. of Civ.P. 26(c) to establish the need for the protective order it seeks. Moreover, ITW's proposed compromise of allowing May Coating to conduct on-site testing at a customer's facility is reasonable. Defendant's motion for a protective order is granted.

### B. *PLAINTIFF'S MOTION TO COMPEL.*

■ May Coating brought a motion to compel discovery.[2] May Coating's Interrogatory No. 10 and Document Request Nos. 2, 3, 4, and 7 relate to ITW customers. The issue was discussed *supra.* in connection with ITW's motion for a protective order, which was granted. May Coating's motion to compel with respect to Interrogatory No. 10 and Document Request Nos. 2, 3, 4, and 7 is denied.

■ May Coating's Interrogatories Nos. 6 and 7 ask ITW to identify any infringement or validity/enforceability opinions of counsel. The court finds that May Coating is entitled to this information. May Coating's motion to compel with respect to these interrogatories is granted. However, Interrogatory No. 8 asks ITW to state whether it will rely on any of those opinions as a defense against charges of willful infringement. ITW objected to the interrogatory on the basis that it was premature. ITW has not yet determined if it will rely on any opinions. At the hearing, May Coating agreed that Interrogatory No. 8 was premature. May Coating's motion to compel with respect to Interrogatory No. 8 is denied.

Based upon all the files, records and proceedings herein,

### IT IS HEREBY ORDERED:

1. Plaintiff's motion to compel discovery is **GRANTED in part and DENIED in part** [19]; with respect to Int. Nos. 6 and 7 is **GRANTED**; with respect to Int. No. 8 is **DENIED**; with respect to Int. No. 9 is **DENIED as MOOT**; with respect to Int. No. 10 and DR Nos. 2, 3, 4, and 7 is **DENIED**; and

2. Defendant's motion for a protective order is **GRANTED** [22].

---

2. At the hearing, May Coating represented that ITW had allowed inspection of its business records pursuant to 33(c). May Coating's motion to compel with respect to Interrogatory No. 9 is denied as moot.